Coffin, Suit.
By the statute (3 Rev. JStat., 244, § 7, 5th Ed.), surrogates have the same power as the supreme court (formerly chancery) to appoint general guardians for minors (2 Kent Com., 224). That court had power to appoint one person. guardian of the estate, and another of the person (Dayton, Surr., 675, and cases cited).
It seems to me to follow that if the late guardian had not been relieved from his trust, but had by some ¡rule of. law been divested of control either over the person or over the estate of the ward, he would have retained his power over the other. Hence, if the marriage of the ward does not, ipso facto, render a guardian of either her person or estate unnecessary, this court has power to appoint one. What, therefore, is the effect of her marriage, and what marital rights has her husband as to her person and property % Chancellor Kfnt (2 Com. 226), after reviewing various English decisions, concludes thus : “It would be quite reasonable that the marriage of a female ward should determine the guardianship, both as to her person and her estate. It ought to be so as to her person, but not as to her estate, if she married- a minor. Upon the *216 marriage of a male ward, the guardianship continues as to his estate, though it has been thought otherwise as to his person.” This doctrine is adhered to in Matter of Brick’s Estate (15 Abb..Pr., 12). The opinion delivered by Judge Daly, acting as surrogate in that case, is remarkable for the research of the learned judge into the origin, history, and jurisdiction of surrogate’s courts. Before, however, entering upon that field of inquiry, he disposes of a question identical in principle with that presented here, and reaches a conclusion in which I am unable to concur. The person in that case who petitioned for the opening of an accounting had by the executor, and for a further accounting by him, was a married female minor. It was objected that her testamentary guardian, and not herself, was the proper person to make the application, and that it could not be made by her, and she insisted that the guardianship was terminated by the marriage. The court, however, after briefly referring to the authorities which are cited by Kent, and to some others, determining that the guardianship of both the person and estate of the ward ceased, and became vested in the husband as such, or, at least, that he has a right to reduce her property to bis possession,*—overruled the objection.
At common law the husband undoubtedly had a right to reduce his wife’s choses in action to his possession, and thus convert them to his own use (2 Kent Com.; 135); and a legacy, or a distributive share of the wife, is to be regarded as a chose in action (2 Kent Com., 117, 4th Ed., Notes). So if the wife, whether a minor or an adult, should die, the husband, at common law, and also formerly by statute, had the right to administer upon her estate, and to reduce to his possession, and enjoy exclusively, his wife’s personal property. Thus, the *217 marriage relation clothed him with rights to her person and property, which the law recognized and protected. By our recent statutes, however, the wife is secured in the possession and enjoyment of her separate estate, and, if she be an infant, her rights should be jealously guarded until she shall reach an age which would entitle her to the possession and disposal thereof. The act of 1848 provides that “the real and personal property of any female who may hereafter marry, and which she shall own at the time of marriage, and the rents, issues, and profits thereof, shall not be subject to the disposal of her husband, nor be liable for his debts, and shall continue her sole and separate property, as if she were a single female.” Surely this statute was not intended for adult married women only, when it has ever been, and is still, the policy of the law to guard with just and great solicitude the rights of infants. Suppose this married minor were “ a single female,” the property would still, of course, belong to her, but it could only be controlled and managed by a guardian, or be invested by the surrogate for her benefit (3 Rev. Slat, 177, §§ 52, 53, 5th Ed. ; Id. § 87, 185).
I can but think, with great deference, that the distinguished counsel engaged in the Matter of Brick’s Estate (decided in 1862), failed to call the attention of the learned judge who delivered the opinion in that case, to the statute of 1848. It was there held, as' already mentioned, that the married female minor might properly petition without the intervention of a guardian , and it seems to me a legitimate sequence that she may personally receive her share of the estate, and give it to her husband, or squander it, or otherwise dispose of it as inclination or caprice may dictate ; and again, if the common law on this subject still prevails, notwithstanding the act of 1848, then does it not follow as a necessary corollary, that the husband may recover and *218 take to his own use her legacy or distributive share, and other cJioses in action, and thus defeat the very design of that act %
Thus all the safeguards the law and the courts have erected so carefully to protect the estates of infants, would be at once beaten down. If this doctrine shall hold good as to a married female minor of twenty years, it will equally apply to one just turned fourteen. The law has wisely fixed the period when the ward and her property shall be emancipated from wardship, at the age of twenty-one. Then, and not until then, can she make valid contracts as to her property, or manage or control it in any manner, except by a testamentary disposition made at and after attaining the age of sixteen.
On the whole, I think the only way to enable this minor to avail herself of the full benefit of the act sometimes called “The Married Women’s Act,” is, for this court to so place her property as to render it secure until she shall have attained her majority ; and he r application is accordingly granted.

 In Brick’s Estate, the court held that as the marriage of a female ward terminated the guardianship, she was entitled to petition in person.